435 So.2d 528 (1983)
J.B.N. MORRIS
v.
RENTAL TOOLS, INC. and Research-Cottrell, Inc.
No. 83-CA-462.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1983.
*529 Michael H. Piper, III, Herbert W. Christenberry, Christenberry & Associates, Ltd., Dando B. Cellini, McGlinchey, Stafford, Mintz & Cellini, PLC, New Orleans, for plaintiff-appellee.
James A. Babst, Marc G. Shachat, New Orleans, for defendants-appellants.
Before CHEHARDY, BOWES and CURRAULT, JJ.
CURRAULT, Judge.
This expedited appeal arises from a denial of an exception of no right of action filed by defendants, Rental Tools, Inc. and Research-Cottrell, Inc., in response to an action by plaintiff, J.B.N. Morris, for violations of the sui generis statutes pertaining to the Louisiana Unfair Trade Practice and Consumer Protection Act and the Louisiana Anti-Trust Laws.

*530 PROCEDURAL HISTORY
On November 30, 1982, defendants filed suit in a New Jersey court for injunctive relief, alleging a breach, by plaintiff, of the non-competition portion of a contract between the parties. Jurisdiction was denied and that judgment is presently on appeal in New Jersey.
Subsequently, on December 3, 1982, plaintiff filed suit in the Twenty-Fourth Judicial District Court, seeking the transfer of, and damages for, failure to transfer certain shares of stock allegedly owed to plaintiff and withheld by defendants.
On December 27, 1982, defendants, in response to the Louisiana action, filed a declinatory exception of lis pendens based on the New Jersey suit. Plaintiff consequently amended and supplemented his petition on January 19, 1983 to include claims under LSA-R.S. 51:1401 et seq., the Louisiana Unfair Trade Practice and Consumer Protection Act and LSA-R.S. 51:122 for restraint of trade, and on January 24, 1983, the lis pendens exception was withdrawn.
In February, 1983, plaintiff filed for a writ of mandamus relative to the transfer of the stock and defendants filed various exceptions. On March 14, 1983, the trial court sustained the exception to the writ of mandamus as an unauthorized use of a summary procedure and denied the exceptions of jurisdiction, vagueness and lis pendens. On March 23, 1983, defendants filed a peremptory exception of no right of action under the antitrust statute and the Unfair Trade Practice Statute. The hearing was held on April 5, 1983, and in a judgment signed on April 11, 1983, the exception was denied. Defendants then perfected this appeal of the denial of the exception of no right of action. Subsequently, on the morning of oral argument, defendants presented a motion to strike portions of appellee-plaintiff's brief to this court as including exhibits and references to matters not introduced into evidence and thus not properly before the court on appeal.

ISSUES ON APPEAL
The issues presented on appeal are:
(1) Whether the trial court correctly applied the appropriate standards for determining whether plaintiff has standing to assert a private action under the Louisiana Unfair Trade Practices and Consumer Protection Act or the Louisiana Antitrust Laws; (2) Whether the trial court improperly relied on the pleadings in ruling on the exception of no right of action.
The appeal is properly before the court under LSA-R.S. 51:134 which provides that unless the party cast appeals the judgment within five days, the ruling shall have the effect of res judicata.
Prior to disposing of the primary issue, i.e., the correctness of the trial court's application of the standings standards under the statutes, we will first address the motion to strike.

Motion to Strike
In its motion, appellant argues that numerous documents appended as exhibits in brief to this court and references to same are either outside the record or improperly before the court in that they were not introduced into evidence in the hearing on the exception. A review of the record reveals that numerous documents found their way into the record by attachment to the pleadings or to the exceptions filed in this case. However, the record is devoid of a transcript of the hearing on the exception of no right of action. Lacking a minute entry note of evidence, we are unable to ascertain what factual evidence, if any, was introduced to either support or controvert the exception, aside from appellant's admission of the introduction of appellee's deposition testimony. The trial court did provide written reasons for judgment which included several specific findings of fact as follows:
"Plaintiff, defendants and Research Cottrell Tools, Inc. entered into an agreement and plan of merger on July 9, 1980. Said agreement called for plaintiff and defendants to perform certain acts. A *531 suit was initially brought in New Jersey. The trial court dismissed said suit as lacking jurisdiction. That matter is presently under appeal.
Defendants alleged in their New Jersey suit that plaintiff has competed with them individually or through a corporation. In a memorandum filed herein for a prior hearing, defendants alleged that plaintiff has competed with them by substantially enlarging his commercial activities elsewhere. Now, in the present hearing, counsel for defendants allege and argue that plaintiff has no right of action to proceed because plaintiff is not a business competitor.
Plaintiff claims that the withholding of 150,000 shares of Research-Cottrell, Inc. stock by defendant is an unfair method of competition because defendant conditioned said transfer of shares on an agreement not to compete. Over the last several months, plaintiff made active inquiries concerning tubing prices, checked delivery dates and negotiated for acquisition of a lease on a shop. Plaintiff alleges he has the capacity and ability to compete in business with defendants."
"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts. LSA-C.C.P. art. 681. The exception of no right of action raises the question of whether the plaintiff has any interest in enforcing judicially the right asserted." Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254, 1255 (La.1979); Jefferson National Bank & Trust Company v. National Gold Mining Co., Inc. and Virgil Lloyd, 420 So.2d 997 (La.App. 5th Cir.1982).
Unlike the no cause of action exception, evidence is admissible to support or controvert the objection of no right of action when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931. Thus, the no right of action cannot be utilized to determine whether defendant can stand in judgment, or to urge that plaintiff has no right simply because there is a valid defense. Morton v. Washington National Insurance Company, 420 So.2d 1019 (La.App. 5th Cir.1982); Selber Bros. v. Bryant, 406 So.2d 251 (La.App. 3d Cir.1981). Such defense goes solely to the merits.
In order to determine the question of a party's right to institute an action in Louisiana, the legal test is whether plaintiff belongs to that particular class of persons to whom the law grants a remedy for the particular harm alleged. Morton, supra.
The burden of proof on an exception of no right of action is on the exceptor. Clark v. Clark, 377 So.2d 544 (La.App. 3d Cir.1979); Town of Grand Isle v. Dynamic Constructors, Inc., 374 So.2d 703 (La.App. 1st Cir.1979). The well-pleaded facts of the petition and the contents of attached incorporated documents and exhibits are controlling in determining both a no cause and no right of action. Waterworks District No. 3 of Rapides Parish v. City of Alexandria, 236 La. 804, 109 So.2d 426 (La.1959). Absent evidence to the contrary, the allegations of fact set forth in the pleadings are taken as true. Clark, supra; Burns v. Genovese, 254 La. 237, 223 So.2d 160, 254 La. 237 (La. 1969). Documents made exhibits to pleadings are a part thereof for all purposes. LSA-C.C.P. art. 853; Great Sweet Grass Oils Co. v. Kroy-American Oils, Inc., 129 So.2d 591 (La.App. 2d Cir.1961). A statement in a pleading may be adopted by reference in a different part of the same pleading or in another pleading in the same court. LSA-C.C.P. art. 853.
In addition, where the record on review is lacking a transcript or a note of evidence, the factual findings of the trial court are presumed to have been based on proper and competent evidence and will be adopted by the reviewing court. Pate v. Republic Bank, 414 So.2d 1367 (La.App. 2d Cir.1982); Gardemal v. MCM Industries, Inc., 398 So.2d 144 (La.App. 3d Cir.1981), writ denied, 401 So.2d 994 (La.1981); Succession of Walker, 276 So.2d 372 (La.App. 2d Cir.1973).
Pursuant to the above cited legal principles, we find that our consideration of the issue is limited to the plaintiff-appellee's petition and amending and supplemental *532 petition, and those documents incorporated as part of those pleadings (The Employment and Non-Competition Agreement); the deposition of appellee Morris admittedly introduced into evidence at the hearing; and the factual findings in the trial court's reasons for judgment.
The question thus remaining is whether the trial court appropriately applied the standards to be met for a private right of action under the statutes at issue. We find the trial court's conclusion to be correct based on the evidence.

The Exception of No Right of Action
The Louisiana Unfair Trade Practice and Consumer Protection Act, LSA-R.S. 51:1405(A) provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business are hereby declared unlawful." The law confers on a private individual the right of action for damages on "any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. § 51:1405." .... LSA-R.S. 1409. (Emphasis added). La.R.S. § 1402(8) defines "person" as a "natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity."
The Louisiana restraint of trade law in LSA-R.S. 51:122 provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." The private right of action is conferred by La.R.S. § 51:137 on "[a]ny person who is injured in his business or property by any person by reason of any act or thing forbidden by this Part...." Both LSA-R.S. 51:1409 and LSA-R.S. 51:122 are apparently penal in nature and Section 1409 has been held to be "subject to reasonably strict construction." Coffey v. Peoples Mortgage & Loan of Shreveport, Inc., 408 So.2d 1153, 1516 (La.App. 2d Cir.1981).
In respect to the Unfair Trade Practice and Consumer Protection Act (LSA-R.S. 51:1401 et seq; 51:1409), the private right of action applies "to consumers and business competitors." Gil v. Metal Service Corp., 412 So.2d 706, 707 (La.App. 4th Cir. 1982). Appellant argues the evidence fails to show that appellee is either a consumer or business competitor in that part of the commerce of this state affected by the alleged violations. The trial court found otherwise.
The offensive conduct complained of by appellee in its supplemental and amended complaint alleges that defendants wrongfully and unjustifiably conditioned "the transfer of the 150,000 shares of Research-Cottrell, Inc. stock upon appellee, Morris', agreement not to compete, directly or indirectly, with any Research-Cottrell, company or group during a period of eight years from the effective date of the merger or five years after plaintiff's employment with Rental Tools, Inc. terminated, whichever period expired first." The petition further alleges that this stipulation was in furtherance of an attempt by Research-Cottrell, Inc. and Rental Tools, Inc. to eliminate competition in the leasing of oilfield service equipment, and that such conduct violated the Louisiana Unfair Trade Practices and Consumer Protection Law, R.S. § 51:1401 et seq.
Appellee urges that he has standing under R.S. 51:1409(A) to proceed as he has suffered loss due to the stipulation which unfairly restricts competition, and that he is both an actual business competitor, as well as a potential competitor through his activities on behalf of Julie-Ann Corporation, an entity wholly-owned and financed by appellee.
As a matter of fact, the trial court found through the uncontroverted deposition testimony of appellee that he made active inquiries concerning tubing prices, checked delivery dates and negotiated for acquisition of a lease on a shop, and thus has been and is presently preparing to compete with defendants.
*533 In addition, a review of the Employment and Non-Competition Agreement shows that appellants acknowledge appellee's potential ability to compete individually, directly or indirectly, as well as through appellee's companies in existence at the time which were excluded from the non-competition section. Furthermore, the trial court found as a factual matter that appellant's New Jersey pleadings stated a claim for injunctive relief based upon appellee, Morris', actual or threatened competition outside the scope of the permissible activities delineated in the agreement. While consideration of those statements does not constitute judicial admissions under LSA-C.C. art. 2291, they are admissible impeachment evidence. Succession of Bates, 227 So.2d 19 (La.App. 2d Cir.1969); Twillie v. H.B. Zachry Co., 380 So.2d 747 (La.App. 4th Cir. 1980).
Without going further, appellee has thus shown his right or interest in pursuing this action; however, appellee Morris also argues that aside from the factual findings, even the potentiality of competition is sufficient to create a right of action. We agree.
While Louisiana jurisprudence neither defines nor traces the parameters of the class of "business competitors", the Trade Commission Act upon which the Louisiana Act is patterned has been interpreted to include potential as well as actual competitors. 15 U.S.C.A. § 45(a)(1), Federal Trade Commission v. Raladam Company, 283 U.S. 643, 649, 51 S.Ct. 587, 591, 75 L.Ed. 1324 (1931).
While appellee notes correctly that the F.T.C. Act differs from the Louisiana Act in that the Federal Statute does not provide for a private right of action, the court in Guste v. Demars, 330 So.2d 123, 125 (La. App. 1st Cir.1976) stated: "The language of this section tracks closely that of the Federal statute. 15 U.S.C. Section 45(a). Because of the variety or possible unfair and deceptive practices, the Federal statute was intentionally broadly written, leaving the determination of individual violations to the Commission and the courts. Our legislature has expressed a similar intention in patterning our law so closely on the Federal statute. Therefore, we may and should consider interpretations of the Federal courts and of the Commission relative to such similar statutes to adjudge the scope and application of our own statute." (Emphasis added). See also: Comment, Unfair Competition: A Comparative Study of Its Role in Common and Civil Law Systems, 53 Tul.L. Rev. 164, 186 (1978).
As the United States Supreme Court noted in the Raladam case:
It is obvious that the word "competition" imports the existence of present or potential competitors, and the unfair methods must be such as injuriously affect or tend thus to affect the business of these competitorsthat is to say, the trader whose methods are assailed as unfair must have present or potential rivals in trade whose business will be, or is likely to be, lessened or otherwise injured. It is that condition of affairs which the commission is given power to correct.... 283 U.S. at pg. 649, 51 S.Ct. at pg. 590.
In conclusion, by virtue of the ongoing activities by appellee or by virtue of appellee's potential ability to compete directly or indirectly, facts recognized by appellant in the Agreement and the New Jersey pleadings, appellee's right of action is supported under LSA-R.S. 51:1401 et seq.
In respect to appellee's claim for treble damages for restraint of trade under LSA-R.S. 51:122, appellant alleges that a private plaintiff has standing to proceed under the antitrust laws only if his injury is a result of the restraint imposed on commerce by the allegedly illegal acts.
Appellant further argues that the allegation by appellee that the actions ascribed to defendants constituted an attempt "to eliminate competition in the leasing of oilfield service equipment, most notably blowout preventers" does not allege that he is a competitor or a consumer in the allegedly affected commercial sector and, further, that he has no standing simply because he is a shareholder or employee of a firm engaged in that line of commerce; citing, In *534 re Industrial Gas Antitrust Litigation, 681 F.2d 514 (7th Cir.1982), cert. den., ___ U.S. ___, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983); Schaffer v. Universal Rundle Corporation, 397 F.2d 893 (5th Cir.1968); McNulty v. Borden, Inc., 542 F.Supp. 655 (E.D.Pa.1982). Thus, appellant concludes appellee cannot be said to have been damaged by the market effects of the alleged violation and thus has no right of action.
Appellee agrees that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation. There exists little Louisiana jurisprudence on this issue; however, in the Federal system treble damage actions are limited to injuries to "commercial interests or enterprises." Hawaii v. Standard Oil Co., 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). The directness of injury is also a consideration.[1]
The lower courts have experimented with several different rules for determining whether an injury is sufficiently direct to be remediable by a treble damage action. The rule that has emerged as the majority position, and the position of the U.S. Fifth Circuit, is the "target area" test. As defined in Jeffrey v. Southwestern Bell 518 F.2d 1129, 1131 (5th Cir.1975), the test limits standing to those persons against whom the conspiracy is aimed. In essence, a plaintiff must show that "he is within that sector of the economy which is endangered by a breakdown of competitive conditions in a particular industry." Donovan Construction Company v. Florida Tel. Corp., 564 F.2d 1191 (5th Cir.1978), cert. denied, 435 U.S. 1007, 98 S.Ct. 1878, 56 L.Ed.2d 389 (1978); Battle v. Liberty National Life Insurance Co. 493 F.2d 39, 48-49 (5th Cir.1974).
Appellee alleges in pleadings that the non-competition condition placed upon the transfer of the stock to which he is entitled is restraint of trade which affects him both directly and indirectly in the leasing of oilfield blowout preventers. Both the amending and supplemental petition and the non-competitive agreement assert and recognize appellee's position is such that he is personally within the sector of the economy endangered by the breakdown of competitive conditions. In fact the agreement recognizes appellee's unique position of being capable of competing directly or indirectly. As noted previously, it further specifically excluded certain competitive activities in which appellee was already engaged.
The trial court found, as a matter of fact, that appellee has the intent and is preparing to directly compete with appellant. Furthermore, the pleadings allege and indicate that appellee has the potential to compete through his activities on behalf of Julie-Ann Corporation.
Clearly appellee has a right of action under LSA-R.S. 51:137 to seek relief for the alleged restraint upon his direct competition.
With respect to defendant's restraint on potential competition on behalf of Julie-Ann Corporation, appellee agrees with appellant that standing would not lie merely because Morris owned all of the stock of Julie-Ann Corporation and the competitive activity of Julie-Ann Corporation might have been restrained. However, appellee contends that it is not Julie-Ann Corporation that is being prevented from competing with Rental Tools, Inc., but that appellee is being directly restrained from participating in any competitive activity on Julie-Ann Corporation's part. While the end result is that Julie-Ann Corporation also sustains damage from defendants' restraint, appellee asserts that appellant's conduct, the withholding of plaintiff's stock, is targeted at and affects appellee directly.
In regard to the potential restraint, the parties agree that since there is a paucity of *535 standing jurisprudence under Section 137, Federal jurisprudence under Section 4 of the Clayton Act is instructive. The Fifth Circuit has observed that the antitrust laws are directed at potential as well as existing competition. In North Texas Producers Association v. Young, 308 F.2d 235 (5th Cir. 1962), cert. denied, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963), the Fifth Circuit Court quoted with approval the holding of Delaware Valley Mar. Sup. Co. v. American Tobacco Co., 184 F.Supp. 440 (E.D.Pa.1960):
"Section 4 of the Clayton Act authorizes the recovery of treble damages by any person who is injured in his `business' or `property' by reason of anything forbidden by the antitrust laws. Defendants contend that since plaintiff never actually engaged in business, it had no business within the intendment of Section 4. Defendant's argument necessarily presupposes that when Congress authorized treble damage suits it meant to distinguish between the rights of persons who are put out of business and the rights of persons who are kept out of business by a conspiracy. It is unreasonable to suppose that such a distinction was intended by Congress. The purpose of the antitrust laws is to promote competition and to prevent its restraint. This purpose is no less thwarted when a person who intends and is prepared to embark in trade is stopped at the outset, than it is when a going business is brought to a standstill. It is as unlawful to prevent a person from engaging in business as it is to drive him out of business." 308 F.2d at 242-43. (Emphasis added)
In Martin v. Phillips Petroleum Company, 365 F.2d 629 (5th Cir.1966), the court noted:
"Some of the elements considered by the courts include the ability of plaintiff to finance the business and to purchase the necessary facilities and equipment, Waldron v. British Petroleum Co., Ltd., [231 F.Supp. 72] supra; the consummation of contracts by the plaintiff, North Texas Producers Association v. Young, supra; affirmative action by plaintiff to enter the business. Pennsylvania Sugar Refining Co. v. American Sugar Refining Co., 2 Cir.1908, 166 F. 254; Washington Professional Basketball Corporation, Inc. v. National Basketball Association, S.D. N.Y., 1956, 147 F.Supp. 154; and the background and experience of plaintiff in the prospective business, Peller v. International Boxing Club, Inc., 7 Cir.1955, 227 F.2d 593, Rossman v. Pullman Co., S.D. N.Y., 1936, 15 F.Supp. 325.
In conclusion, after a review of the law and evidence, we find that the trial court properly denied the exception of no right of action in that in the absence of contrary evidence, the pleadings and attendant documents along with the factual findings of the court clearly show appellee has a right or interest in the action as a direct or potential business competitor under LSA-R.S. 51:1409 and as the direct target of appellant's restraining conduct under LSA-R.S. 51:122 et seq.
Accordingly, the judgment denying the exception of no right of action is hereby affirmed. Costs of this appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] In Associated General Contractor of California v. California State Council of Carpenters, ___ U.S. ___, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the U.S. Supreme Court stated that the question requires an evaluation of "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." At page 907. There must be a causal connection and other factors to consider are the directness or indirectness of the alleged injury as well as the potential for duplicate recovery or complex apportionment of damages and the existence of more direct victims.